Matter of Y (A) (2025 NY Slip Op 50690(U))

[*1]

Matter of Y (A)

2025 NY Slip Op 50690(U)

Decided on April 1, 2025

Family Court, Bronx County

Broderick, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 1, 2025
Family Court, Bronx County

In the Matter of Y 
 A Child Under the Age of Eighteen Years Alleged to be Abused/Neglected By A, Respondent

XXXXX

Lauren Broderick, J.

On June 13, 2024, a petition was filed by the Administration of Children's Services (ACS) "Petitioner" herein, alleging that A, "Respondent" herein, abused and neglected her son Y, born in May 2024. In sum and substance, Petitioner alleges that Y suffered a displaced fracture of his left humerus bone at the elbow joint, at least one distal femur fracture and at least one other femur fracture and that those injuries are consistent with non-accidental trauma. The petition further alleges that at the time of the filing of said petition, A was psychiatrically hospitalized with depression and had an unidentified discharge date.
The fact-finding commenced on November 25, 2024. The hearing continued as a combined fact-finding hearing and FCA Section 1028 hearing on December 5, 2024, and for over 20 court dates thereafter. All counsel rested on the combined hearing, with oral summations on the FCA 1028 hearing on March 18, 2025. 
On March 13, 2025, Petitioner filed the instant motion, by way of Order to Show Cause, seeking to strike certain portions of the testimony of Respondent's expert witnesses Dr. Julie Mack and Dr. Christoper Sullivan at the fact-finding hearing and the FCA Section 1028 hearing pursuant to Frye v. United States, 293 F. 1013, 54 App. D.C. 46 (1923) and its applicable progeny in New York. On March 21, 2025 counsel for Respondent filed an affirmation opposing the relief. Also on March 21, 2025, Y's attorney filed an affirmation opposing the relief. On March 25, 2025, Petitioner filed a Reply Affirmation.
Petitioner contends that the testimony of Respondent's expert witnesses Dr Julie Mack and Dr Christoper Sullivan lacked a sufficient basis for the court to conclude that their opinions about classic metaphysical lesions are generally accepted in the medical community. [*2]Specifically, Petitioner argues that the opinions proffered by Respondent's expert witnesses were primarily based upon their individual clinical experiences and not based on objectively accepted scientific principles and methodologies.
Respondent argues that Petitioner's motion should be denied because (1) the motion is procedurally improper and untimely; (2) the arguments raised by Petitioner go to the weight of and credibility of each expert's testimony, not their admissibility; and (3) the expert testimony is based on generally accepted scientific principles and methodologies.
Y's attorney adopts the arguments made by Respondent's counsel in its affirmation in opposition and emphasizes that the opinions of Respondent's expert witnesses were based on generally accepted principles and methodologies in their respective scientific fields and should not be stricken.
Petitioner, in its reply affirmation, maintains that its motion is not untimely, that the CPLR 3101d disclosure notice provided for Respondent's expert witnesses were not sufficiently detailed for Petitioner to move for a Frye hearing earlier, and contends that a Frye hearing is warranted in this case.
A review of the relevant parts of the record reflects Respondent provided all counsel with CPLR Section 3101(d) expert disclosures for Dr Julie Mack and Dr Christopher Sullivan as well as their curriculum vitaes. Dr Mack testified before the court on direct and cross examination on February 5, 2025. Dr Mack was deemed an expert in pediatric radiology upon Petitioner's and Y's attorney's consent. Dr Mack disagreed with the diagnosis that Y suffered from fractures as opined by Petitioner's expert witnesses who testified on Petitioner's case in chief. Petitioner, as well as Y's attorney had the opportunity to cross-examine Dr Mack. Petitioner did not seek to voir dire Dr Mack, did not file a motion for a Frye hearing to challenge her testimony, or otherwise object that Dr Mack's testimony was inadmissible scientific evidence.
Dr Christopher Sullivan, was the next witness called by Respondent on February 11, 2025. Dr Sullivan was deemed an expert in pediatric orthopedics upon Petitioner's and Y's attorney's consent. Dr Sullivan disagreed with the diagnosis that Y suffered from fractures as opined by Petitioner's expert witnesses who testified on Petitioner's case in chief. On February 11, Dr Sullivan testified on direct examination, and cross examination by Y's attorney, and the matter was adjourned to February 21, 2025 for Petitioner's cross examination. On February 21, 2025, Petitioner cross examined Dr Sullivan. Petitioner did not seek to voir dire Dr Sullivan, did not file a motion for a Frye hearing to challenge Dr Sullivan's testimony or otherwise object that Dr Sullivan's testimony was inadmissible scientific evidence.
Respondent A testified on February 25, February 28 and March 7, 2025.
On February 25, 2025, Petitioner informed court and counsel of its intention to present rebuttal evidence. The court directed Petitioner to make its application for a rebuttal witness on February 28, 2025. Petitioner did not provide the court and counsel with the name of a rebuttal witness on February 28, and the court directed that Petitioner make its application for a rebuttal witness in writing by March 7, 2025, to include the specific portions of Respondent's expert testimony it intended to rebut and the proposed testimony of the rebuttal witness. On March 7, 2025, Petitioner instead filed an Order to Show Cause seeking an adjournment to locate a rebuttal witness because Dr Sullivan's testimony could not have been reasonably anticipated by Respondent's CPLR 3101d notice. In court on March 7 Petitioner, in sum and substance clarified that it had "been trying to explore a witness, having spoken to doctors, to other orthopedic [*3]surgeons, who will come in to speak about some of his opinions and whether they are regularly held realize that we never established if Dr Sullivan's opinions are actually accepted in the medical field, which is required under Frye 
..." . The court granted Petitioner's request to locate a rebuttal witness and ordered that information regarding a rebuttal witness be provided to court and counsel by March 11, 2025. The court set March 14 as the court date for the testimony of the rebuttal witness. Alternatively, if no rebuttal witness testified, counsel would give oral summations as scheduled on March 18.
On March 11, 2025, Petitioner informed Court and counsel via email that it did not intend to call a rebuttal witness at the hearings on this matter. The matter was adjourned as previously scheduled, to March 18 for summations by counsel on the 1028 hearing.
DISCUSSION
"The long recognized rule of Frye v. United States (293 F. 1013, 54 App. D.C. 46 (1923) is that expert testimony based on scientific principles or procedures is admissible but only after a principle or procedure has 'gained general acceptance' in its specified field . People v. Wesley, 83 NY2d 417, 422, 611 NYS2d 07 (1994); See, People v. Wernick, 89 NY2d 111, 117, 651 NYS2d 392 (1996). Objections pursuant to Frye contemplate a hearing be conducted to challenge the admissibility of the expert's testimony. See Mitchell v. Brown, 43 AD3d 1009, 842 NYS2d 507 (2nd Dept., 2007), where the judgment was reversed based upon the improvident exercise of discretion by the trial court which granted the plaintiff's pre-trial motion to preclude defendant's proposed expert without conducting a hearing pursuant to Frye. Frye hearings, like motions in limine, challenge the admissibility of evidence and should be addressed prior to trial in order to achieve its stated purpose. See, Parker v. Mobil Oil Corp, 7 NY3d 434(2006), rearg den., 8 NY3d 828(2007). In Troyano v. Burris, 196 AD3d 525 (2nd Dept, 2021), the court held that a defendant's motion to strike expert testimony made after the close of evidence was untimely and prejudicial to the plaintiff. The court further held that any defects in the expert's opinion or the foundation on which those opinions are based should go to the weight to be accorded that evidence by the trier of fact, and not to its admissibility. In Goldsmith v. Kipnis, 186 AD3d 572(2nd Dept, 2020), the court denied plaintiff's motion, made mid-trial in a medical malpractice case, to preclude defendant's expert from testifying about theories of causation which were not specifically referenced in defendant's CPLR 3101d expert disclosure statement. As noted by the court, the basis of plaintiff's objection to the expert disclosure was readily apparent based on the disclosure and could have been raised and cured prior to trial.
In Zelaya v. New York, NY Auto Body Inc. 41 AD3d 594, 836 NYS2d 430(2nd Dept., 2007), the court upheld the judgment and affirmed the lower court's decision to allow plaintiff's medical expert's testimony, as defendant waived any objection to this testimony by failing to raise a Frye objection until after the close of plaintiff's case.
The Frye rule does not apply where experts base their testimony on personal training or their own experiences. People v. Oddone, 22 NY3d 369, 375 (2013). Absent a novel or experimental scientific theory, a Frye hearing is generally unwarranted. People v. Brooks,31 NY3d 939, 941 (2018); People v. Williams, 35 NY3d 24, 124 NYS3d 593, 147 NE3d 1131 (2020). A physician's factual disagreement with a patient's causation theory in a medical malpractice action did not require a Frye hearing to determine the admissibility of expert testimony as it was not a novel theory of causation. See, Lipschitz v Stein, 65 AD3d 573, 884 NYS 2d 442, 446 (2nd Dept., 2009).

Upon review of the instant motion, including all papers filed in support and in opposition [*4]hereto, and after due deliberation thereon, the Court denies Petitioner's motion to strike portions of Respondent's expert witness's testimonies.
Petitioner's motion as filed, is procedurally improper and untimely. Petitioner's motion seeks the preclusion of the witnesses' testimony without first allowing for a hearing to challenge the admissibility of the testimony. Additionally, Petitioner's motion, filed after all counsel had rested, is untimely and prejudices Respondent who subsequently testified. Petitioner waived prior opportunities to object to and challenge the admissibility of Dr Mack's and Dr Sullivan's testimony.
The court is not persuaded by Petitioner's attempt to distinguish Troyano v. Burris and finds Petitioner's reliance on Lara v NYC Health and Hosps Corp 305 AD2d 106, 757 NYS2d 740 (1st Dept., 2003) unpersuasive,, as the lower court held a Frye hearing during trial, the court reserved decision on said hearing, and thereafter permitted the doctor to testify. Similarly, Petitioner's reliance on Sepulveda v. Dayal, 143 AD3d 591, 39 NYS2d3451 (1st Dept., 2016) is misplaced, as the case was set down for a Frye hearing by the motion court, in the context of a determination for summary judgment, prior to the trial itself.
Dr. Mack and Dr Sullivan disagreed with the diagnosis that Y suffered from fractures, as opined by Petitioner's expert witnesses. The sufficiency of the basis of an expert's opinion goes to the weight to be accorded to the evidence. The court will have to determine the reliability, credibility and appropriate weight to be given to each expert's testimony, but that does not necessitate a Frye hearing in order to properly do so. Dr Mack's and Dr Sullivan's testimony were based on their personal training and experience and relied upon generally accepted scientific theories and methodologies. These expert opinions were not novel scientific theories contemplated by Frye.
It is hereby
ORDERED that Respondent's motion is denied.
DATED: April 1, 2025
ENTER:
HON. LAUREN BRODERICK, JFC